No. 25,964.

FARMERS GRAIN AND COÖPERATIVE UNION, *Appellee*, v. JAMES C. DAVIS, as Agent, etc., and THE UNION PACIFIC RAILROAD COMPANY, *Appellants*.

SYLLABUS BY THE COURT.

CARRIERS—*Action for Loss of Goods—Contractual Limitation as to Time for Bringing Suit.* A carload of grain was transported without loss from Walker, Kan., to Kansas City, Mo., its destination and the terminus of the carrier's road. At Kansas City the grain was sold to a purchaser, to whom the indorsed shipper's-order bill of lading was delivered. The purchaser surrendered the bill of lading to the carrier and received in lieu of it from the carrier a shipper's-order bill of lading for transportation of the grain from Kansas City to Buffalo, N. Y., over connecting lines. In the course of transportation from Kansas City to Buffalo, which was completed by delivery on February 21, 1920, some of the grain was lost. The limitation upon time for instituting suit, contained in the carrier's tariff schedule on file with the interstate commerce commission, was inserted in the second bill of lading, but not in the first. *Held:* Liability for the loss arose under the second bill of lading; the contract period of limitation was not abrogated by the amendment of the act to regulate commerce of February 28, 1920, or by the transportation act of that date; and action by the first shipper to recover from the carrier issuing the bills of lading, commenced after the contract period expired, was barred.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed November 7, 1925. Reversed.

*T. M. Lillard, Bruce Hurd* and *O. B. Eidson,* all of Topeka, and *A. L. Berger,* of Kansas City, for the appellants.

*William K. Ward* and *Grant W. Harrington,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover the value of grain lost in interstate shipment. Plaintiff recovered, and defendants appeal. The question is whether the action was commenced in time.

On January 9, 1920, plaintiff delivered grain to the Union Pacific Railroad Company at Walker, Kan., for transportation to Kansas City, Mo., the terminus of the carrier's railroad. The carrier issued to plaintiff a shipper's-order bill of lading, and the grain was transported to destination without loss. At Kansas City the bill of lading came properly into the hands of a holder, who on January

Carriers, 10 C. J. § 505.

13, 1920, surrendered it to the Union Pacific Railroad Company and received from that company a bill of lading, the material portions of which read as follows:

"Received, subject to the classification and tariffs in effect on the date of issue of this original bill of lading, at Kansas City, Missouri, January 13, 1920, from Simonds-Shields-Lonsdale Grain Company, the property described below, . . . Consigned to order of Simonds-Shields-Lonsdale Grain Company. Destination, Buffalo, state of New York, notify Washburn-Crosby Company. At Buffalo, New York. Without inspection. Route, Milwaukee at Kansas City, Michigan Central. Car initial U. P. Car No. 77385. Description of articles: . . . One car bulk wheat. . . . This lading issued in lieu of lading dated Walker, Kansas, January 9, 1920. This bill of lading issued in exchange of B/L No. — issued at Walker, Kansas, on the 9th day of January, by the Union Pacific Railroad Company.

"Received January 13, 1920.—G. F. O. U. P. R. R. K. C. Mo. Simonds-Shields-Lonsdale Grain Company, shipper.—H. G. KAILL, Agent."

The grain was not unloaded at Kansas City, and the Union Pacific car containing it was delivered to the connecting carrier. On February 21, 1920, the contents of the car were delivered at Buffalo to the Washburn-Crosby Milling Company, who had become the holder of the second bill of lading. The grain sued for was lost between Kansas City and Buffalo.

Running parallel with transportation was a course of dealing with respect to the grain. Plaintiff shipped the grain to its agent at Kansas City, who was to settle on destination weight. Plaintiff drew on its agent, attached the bill of lading, duly indorsed, to the draft, delivered the instrument to its bank at Walker, and received credit on account for the amount of the draft. The bank forwarded the draft and bill of lading to its Kansas City correspondent, which notified plaintiff's agent. Plaintiff's agents took up the draft and received the bill of lading. The wheat was weighed, and the car contained the quantity delivered to the carrier. Plaintiff's agent sold the wheat to a grain company, and, with the entire quantity in the car on the carrier's track, made constructive delivery to the purchaser by delivery of the bill of lading. Without knowing anything of what the purchaser might do with the wheat, the plaintiffs agent sold it subject to destination weight. The ultimate destination fixed by the purchaser was Buffalo. The Washburn-Crosby Milling Company settled with the grain company on the Buffalo weight. The grain company settled with plaintiff's agent, and plaintiff's agent settled with plaintiff, on that basis, and the loss was finally borne by plaintiff.

The first bill of lading contained no limitation of time within which suit might be commenced. The second limited the time to two years and a day. The action was not commenced within two years and a day after delivery.

Defendant says that in legal effect the initial carrier made delivery at Kansas City pursuant to the original bill of lading. Precisely what happened was this: With the wheat in its possession undelivered, the initial carrier took up the original bill of lading, issued another in lieu of it for carriage to Buffalo, and delivered the grain to its connecting carrier pursuant to the substituted contract, not the first one. In that way the Union Pacific Company became a party to the transportation beyond Kansas City, and as such liable as initial carrier to anyone privileged to enforce the liability.

Plaintiff says the wheat was transported to Buffalo on the original bill of lading. Precisely what happened was this: The bill of lading issued to plaintiff for transportation from Walker to Kansas City was surrendered by plaintiff's indorsee to the carrier, and in lieu of it, the carrier issued a new bill of lading to a new consignor, for transportation to a new destination. Transportation to the new destination was effected under the new contract of carriage, not the old one, which had served its purpose. Plaintiff was not a party to further movement of the grain. On account of the course of dealing in the grain, plaintiff was exposed to a contingent liability, which, when it accrued, enabled plaintiff to claim privity to the transportation from Kansas City to Buffalo, not as a shipper, but as one suffering loss. This interest arose from and attached to the transportation from Kansas City to Buffalo. As an incident to that transportation, the interest was necessarily subject to the terms of the contract of carriage between those points.

The result would be the same if plaintiff's contention were correct. While the evidence of the contract of carriage issued by the Union Pacific agent at Walker made no mention of a time limitation upon commencement of suit, the terms of the contract in fact binding on both carrier and shipper were contained in the carrier's tariff schedule on file with the interstate commerce commission. That schedule contained the limitation formally inserted in the second bill of lading.

The limitation of time within which suit might be instituted formed part of the contract of carriage, was valid under the then

·existing law, and the carrier's liability attached on delivery at Buffalo on February 21, 1920. Afterward, and on February 28, 1920, an act of congress amending the act to regulate commerce became effective, providing that "It shall be unlawful for any . . . common carrier to provide, by . . . contract, . . . or otherwise," for a shorter period of time for commencement of suit than two years from date of notice by the carrier of disallowance of claim (41 U. S. Stat. 494). Plaintiff contends it is entitled to the benefit of this statute.

Manifestly, the statute was prospective in operation. It changed the law relating to future transportation, but it had no application to lawful contracts already performed. It is sufficient that, without aid from any rule of interpretation, the words of the statute express the meaning just attributed to it. Besides that, giving one shipper a time in which to sue longer than the time given another shipper is forbidden discrimination, if practiced by a carrier. It is not likely that congress intended to discriminate between those shippers whose time to sue had recently expired and those whose time to sue had not quite expired. Furthermore, limitations upon time to sue contained in transportation contracts are not like ordinary statutes of limitation, which do not enter into the obligation, and it is not to be assumed that congress intended, if it had constitutional authority to do so, to reach back and invalidate performed contracts on which liability had accrued.

Plaintiff also contends it is entitled to benefit of the transportation act of February 28, 1920, providing time within which actions originating during federal control might be prosecuted (41 U. S. Stat. 461). It has been· authoritatively determined that this act did not invalidate existing contracts, good when made (*Leigh, Ellis & Co. v. Davis,* 260 U. S. 682).

The judgment of the district court is reversed and the cause is remanded with direction to enter judgment for defendants.